UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID H. PARKER, JR.,
On behalf of himself and as a class,

    Plaintiff,

        v.

BAC HOME LOANS SERVICING LP,
f/k/a COUNTRYWIDE HOME LOANS
SERVICING LP,

    Defendant.

Civil Action No. 11-520 (JEB)

## MEMORANDUM OPINION AND ORDER

Plaintiff David H. Parker, Jr. brings this lawsuit, which he hopes to convert into a class action on behalf of similar customers, against Defendant BAC Home Loans Servicing. He claims that BAC unilaterally canceled a binding loan agreement with him, thereby causing him to incur financial penalties and face the threat of foreclosure. While the parties are engaged in discovery relating to class certification, Defendant has brought the instant Motion, seeking to dismiss three of the counts in the First Amended Complaint. Because the Court determines that BAC is not a "debt collector" within the meaning of the Fair Debt Collection Practices Act, it will grant the Motion as to Counts III and IV, but deny it as to Count II's claim of tortious interference with contract.

**I.**     **Background**

According to the First Amended Complaint, which must be presumed true for purposes of this Motion, Plaintiff refinanced his mortgage in 2006, borrowing money from GreenPoint Mortgage Funding, Inc. Id., ¶ 13. Facing financial difficulties, he sought to modify his loan and

1

ultimately entered into a binding loan-modification agreement with Defendant BAC, "the loan servicer for the current noteholder." Id., ¶¶ 14-19. BAC is "a limited partnership and a distinct entity within the Bank of America corporate family that specializes in residential mortgage loan servicing." Id., ¶ 8. As a loan servicer, BAC "provid[es] financial services to the third-parties that own, or stand as agents or representatives for the owners of, the residential mortgage loans that are the subject of the allegations." Id., ¶ 9.

Under the loan-modification agreement, Plaintiff's new payments of $1,342.74 began in September 2009, and he made these loan payments on time and in full every month from September 2009 until November 2010. Id., ¶¶ 20-21. On August 2, 2010, Plaintiff received a Notice of Intent to Accelerate stating that his loan was "in serious default" and giving him the option to cure if he paid $23,431.94, which included late fees and penalties, by September 1, 2010. Id., ¶ 22. When Plaintiff contacted BAC to inquire about this Notice, BAC denied the existence of the loan-modification agreement. Id., ¶ 23. On August 27, 2010, BAC sent Plaintiff a letter that offered a new loan modification with monthly payments of $1,926.07 per month. Id., ¶ 24. Plaintiff continued to make his mortgage payments until November 2010, when BAC returned his payment on the ground that his mortgage was considered to be delinquent. Id., ¶¶ 26, 28. BAC also wrote him that month to say it could not locate the 2009 loan-modifiction agreement. Id., ¶ 28. Thereafter, BAC stopped accepting Plaintiff's loan payments entirely, and it also stopped passing his payments to Plaintiff's lender. Id., ¶¶ 30-31. BAC also informed Plaintiff that it had referred his property to the foreclosure department on September 30, 2010. Id., ¶ 29.

In addition to breaching his loan-modification agreement, Plaintiff also contends that BAC engaged in improper debt-collection practices by making debt-collection calls to him, even after Plaintiff had sent BAC a formal cease-and-desist letter. Id., ¶¶ 34-36.

Not only does Plaintiff allege improper behavior relating to himself individually, but, in seeking to maintain a class action, Plaintiff makes allegations about BAC's loan-servicing operations generally. For example, Plaintiff asserts that BAC improperly tracks loans, unfairly treating certain borrowers placed on the unfavorable track. Id., ¶¶ 41-43. BAC then subjects these borrowers to "unlawful, harassing debt collection efforts." Id., ¶ 44. Other deficient practices include confusing program guidelines, including a failure to communicate program changes, that have resulted in inappropriate fees and penalties and the treatment of modified loans as in default. Id., ¶¶ 46-52. As a result, BAC "breached its contracts with borrowers whose loans were either formally modified or were within a formal trial period plan." Id., ¶ 51. Plaintiff avers that BAC, in its "pursuit of profits derived from fees earned through servicing agreements," accumulated a servicing portfolio it could not handle. Id., ¶ 53. Plaintiff also alleges that BAC evinced "willful blindness to systemic failures." Id., ¶¶ 53, 55. In April 2011, the Federal Reserve, Office of the Comptroller of the Currency, and Office of Thrift Supervision jointly issued a report explaining the deficiencies of the largest loan servicers, including BAC. Id., ¶ 55. Plaintiff contends that BAC did not seek to improve its servicing processes despite this report. Id., ¶ 57.

On February 8, 2011, Plaintiff brought suit against BAC in the Superior Court of the District of Columbia, following which BAC removed the action to this Court. In his First Amended Complaint, filed July 20, Plaintiff asserts four causes of action: breach of contract, tortious interference with contract, and two violations of the federal Fair Debt Collection

3

Practices Act (FDCPA). Although the parties are engaging in discovery regarding class certification, BAC has now filed a Motion to Dismiss all but the first count of the First Amended Complaint.

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see FED. R. CIV. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. FED. R. CIV. P. 10(c).

4

**III.    Analysis**

As BAC has mounted challenges both to Plaintiff's tortious-interference claim and his FCDPA counts, the Court will address them in turn, ultimately finding for Plaintiff on the former and Defendant on the latter.

   A.  Tortious Interference

Plaintiff alleges that BAC tortiously interfered with his contract with his noteholder when BAC began refusing his mortgage payments, which resulted in BAC's ceasing to transmit payments to the noteholder. First Am. Compl., ¶¶ 85-87. Plaintiff maintains that this caused him to breach his contract with the noteholder. BAC argues that because it is an agent of the noteholder, it cannot tortiously interfere with Plaintiff's contract with its principal. Def. Mot. at 6. Although the Court agrees with BAC that it is an agent of Plaintiff's noteholder, the count survives because Plaintiff has sufficiently alleged that BAC acted with malice in its interference with Plaintiff's contract.

Under District of Columbia law, "a party, through the actions of its agents, cannot interfere with its own contract." Langer v. George Washington Univ., 498 F. Supp. 2d 196, 202 (D.D.C. 2007) (citing Press v. Howard Univ., 540 A.2d 733, 736 (D.C. 1988)). In other words, tortious interference "only arises . . . if there is interference with a contract between the plaintiff and some third party." Bus. Equip. Ctr., Ltd. v. DeJur-AMSCO Corp., 465 F. Supp. 775, 788 (D.D.C. 1978) (citing W. Prosser, LAW OF TORTS § 123, at 952-70 (3d ed. 1964)).

Plaintiff alleges in his First Amended Complaint that BAC does not "own any of the residential mortgage loan products" at issue. Id., ¶ 9. Instead, it "is a loan servicer, providing financial services to the third-parties that own [the loans]." Id. "As a servicer, BAC manages the payment obligations of borrowers whose loans are actually owned by third-parties." Id., ¶

5

37. As such, it is "an intermediary" that "collects payments from borrowers and disburses them to third-party noteholders." Id. Plaintiff's own allegations thus make clear that BAC acts as an agent for noteholders; as such, it generally cannot have committed the tort of intentional interference with its own principal. See, e.g., Newport/Granada L.L.C. v. Wachovia Bank, 2009 WL 3698126 (W.D. Okla. Nov. 2, 2009) (dismissing tortious-interference claim where loan servicer was an agent of plaintiff's lender); Wells Fargo Bank, N.A. v. The Ash Organization, 2010 WL 2681675 (D. Or. July 2, 2010) (granting motion for summary judgment to loan servicer on tortious-interference claim because even if it was not necessarily an agent, it was not an "intermeddling third-party stranger" to contract, and emphasizing that "[bank] interacted with [the borrower] only through [the loan servicer], and in this respect [the bank's] contractual relationship with [the plaintiff] was inextricably linked to its contractual relationship with [the loan servicer]").

This, however, is not the end of the analysis. As Plaintiff correctly points out, there is an exception to this general rule where the agent acts in bad faith. See Opp. at 13. Under D.C. law, an agent of a principal who "improper[ly] interfere[s] with contractual relations . . . with actual malice or for his own benefit, rather than for the [principal's] interest, deserves no protection." Nickens v. Labor Agency of Metropolitan Washington, 600 A.2d 813, 820 (D.C. 1991). Liability may be found if the agent "acts against the corporation's interest, for his own pecuniary benefit, or with the intent to harm the plaintiff." Id. (citing Phillips v. Montana Educ. Ass'n, 610 P.2d 154, 158 (Mont. 1980). Stated differently, in order to find malice, a court must find an "independently wrongful or illegal act." Curaflex Health Servs., Inc. v. Bruni, 899 F. Supp. 689, 697 (D.D.C. 1995) (despite finding use of funds for personal gain and animus towards plaintiff,

6

court held no agency liability for tortious interference because it could not be shown that interference was not done in best interests of corporation).

Whether the agent acted with malice or for an improper purpose is a factual question. Id. "Proof of fraud or malice 'need not be by direct evidence but may appear from all the facts and circumstances of the case.'" Bay General Industries, Inc. v. Johnson, 418 A.2d 1050, 1058 (D.C.1980) (quoting Franklin Inv. Co., Inc. v. Smith, 383 A.2d 355, 359 (D.C. 1978) (citations omitted). In addition, the "evidence that [the agent] acted with malice [need] not [be] overwhelming." Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc., 565 A.2d 285, 292 (D.C. 1989) (allowing question of malice to go to jury when supervisor interfered with employee's ability to perform her job).

At this stage of the proceedings, of course, the Court is bound by the allegations in the First Amended Complaint. Here, Plaintiff alleges that BAC acted in bad faith when it tortiously interfered with Plaintiff's contract. More specifically, Plaintiff alleges that BAC "knowingly and irresponsibly amassed a servicing portfolio that it simply could not handle." First Am. Compl., ¶ 53. Although it knew of its systemic failures, it still "knowingly and intentionally failed to rectify [them.]" Id., ¶¶ 88-89. As a result, it "knew that it was wrongfully declaring loan modifications to be void." id., ¶ 89, and "intentionally procur[ing] breaches between the class members and their noteholders." Id., ¶ 90.

Although this is a reasonably close call, the Court must, at this stage, draw inferences in Plaintiff's favor. It, accordingly, believes that Plaintiff has sufficiently made out its claim for tortious interference. In the event that discovery determines that BAC was acting at the lenders' behest in so treating borrowers, then the bad-faith exception would dissolve. That, of course, is yet to be seen. Defendant's Motion on this issue will be denied.

B.  BAC not a "Debt Collector"

Plaintiff's third and fourth counts assert that BAC violated two provisions of the FDCPA. Defendant argues that it cannot be held liable for any claims under the FDCPA because it is not a "debt collector" under the Act. BAC relies on a specific exemption within the statute: "The term ['debt collector'] does not include — . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . <u>concerns a debt which was not in default at the time it was obtained by such person</u>." 15 U.S.C. § 1692a(6)(F) (emphasis added). Put another way, if BAC was handling the loan before it went into default, it is not a debt collector in this case under the Act. While Plaintiff makes arguments about BAC's practices generally, the issue here is solely whether BAC acted as a debt collector in relation to Plaintiff's loan.

In his First Amended Complaint, Plaintiff avers that he refinanced his mortgage on December 22, 2006, and that his lender was GreenPoint Mortgage Funding, Inc. Id., ¶ 13. He does not state precisely when BAC became the loan servicer, but he does assert that BAC acted in this role in 2009 when Plaintiff first began to have difficulty making his monthly mortgage payments and before any discussion of a loan modification occurred. Id., ¶¶ 15-16. Plaintiff also states that he did not receive notice that his loan was in default until August 2, 2010. Id., ¶ 22. In fact, in previous briefing, Plaintiff argued that "[a]t no point in the [Amended Complaint] does Plaintiff assert that his loan was ever in default." Reply to Def. Original Mot. to Dismiss [ECF No. 17] at 6 n.2 The only reasonable interpretation available, therefore, is that BAC serviced Plaintiff's loan <u>before</u> he defaulted. This is fatal to his claim under the express language of the FDCPA. See Edmond v. Am. Educ. Servs., 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) (granting motion to dismiss on plaintiff's FDCPA claims because "[a]bsent an

8

allegation that plaintiff's loan was in default when [the defendant] acquired it, [the defendant] is not a debt collector and this is not subject to the FDCPA") (citing Brumberger v. Sallie Mae Servicing Corp., 84 Fed. Appx. 458, 459 (5th Cir. 2004) (affirming dismissal of FDCPA claim against student loan servicer because "[b]y its plain terms the FDCPA does not apply" absent an allegation that plaintiff "was in default at the time Sallie Mae began servicing his loans")); Ramirez-Alvarez v. Aurora Loan Servs., LLC, 2010 WL 2934473, at *5 (E.D. Va. July 21, 2010) (granting summary judgment for mortgage loan servicer, which was not debt collector for purposes of FDCPA because it "received the debt in question while it was not in default"); Mondonedo v. Sallie Mae, Inc., 2009 WL 801784, at *5 (D. Kan. Mar. 25, 2009) (granting summary judgment for loan servicer that "obtained the loans originated by [a bank] for servicing prior to default and is exempt from liability under the FDCPA"); Taggart v. Wells Fargo Home Mortg., Inc., 2010 WL 3769091, at *11 (E.D. Pa. Sept. 27, 2010) ("Loan servicers are not 'debt collectors' under the FDCPA unless the debt being serviced was in default at the time the servicer obtained it.").

Plaintiff argues in response that the application of the exclusion under the statute is an affirmative defense that may not be asserted in a motion to dismiss. See Opp. at 7 (citing Scott v. Jones, 964 F.2d 314, 316 (4th Cir. 2010) ("[Defendant] asserted the affirmative defense that he was not a 'debt collector' as defined in the FDCPA.")). Where BAC does not rely on any material outside of Plaintiff's own First Amended Complaint, the face of which proves the infirmity of his FDCPA counts, Defendant may prevail on a motion to dismiss. See Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint."); Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir.

9

2007) ("Further, even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face."); Edmond, 2010 WL 4269129 at *5 (granting motion to dismiss FDCPA count where no allegation plaintiff's loan in default when defendant acquired it).

The Court concludes that because Plaintiff has failed to plead sufficient facts to show BAC is a debt collector under the FDCPA, the two counts relating to that Act must be dismissed.

## IV. Conclusion

The Court, accordingly, ORDERS that:

1. Defendant BAC's Motion is GRANTED IN PART and DENIED IN PART;

2. Counts III and IV are DISMISSED; and

3. Defendant shall file an Answer on or before Jan. 3, 2012.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 20, 2011